IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

───────────────────────────────────────

UNITED STATES OF AMERICA

  -v-                                              20-CR-77

PAUL E. LUBIENECKI,

                       Defendant.

───────────────────────────────────────

## GOVERNMENT'S RESPONSE TO THE DEFENDANT'S PRETRIAL MOTION

**THE UNITED STATES OF AMERICA**, by and through its attorney, James P. Kennedy, Jr., United States Attorney for the Western District of New York, and the undersigned Assistant United States Attorney, respectfully files this response in opposition to the defendant's pretrial motion (Dkt. #14). Specifically, because the Indictment is sufficient on its face, and the defendant is not entitled to a bill of particulars, the defendant's motion should be denied.

## BACKGROUND

On February 4, 2020, Victim 1, who is a member of the local media in Buffalo, New York, contacted the U.S. Attorney's Office to report that a voicemail he had received earlier in the day that contained a death threat. This information was forwarded to Special Agent Randall Garver with the Federal Bureau of Investigation (FBI), who began an investigation by contacting Victim 1. Victim 1 reported that around 5:00 p.m. on February 4, 2020, Victim 1 received an incoming call from a number marked "unknown". The voice mail ended by

naming the village in which Victim 1 resided in and telling Victim 1 he will kill him.  Victim 1 subsequently provided Agent Garver with the voicemail from February 4, 2020, which was 12 seconds in duration.  During the voicemail, the caller criticized Victim 1's professionalism before stating, "…I know where you live in [TOWN].  I'm going to find you. I'm going to kill you."  Victim 1 relayed that other harassing communications had been received from an "unknown" number in August, November, and December 2019.

On February 5, 2020, a subpoena was issued to Verizon Wireless that requested subscriber and toll records for Victim 1's phone number.  The purpose of the subpoena was to identify the "unknown" phone number that was used to make the threat.   On the same date, officials at Verizon Wireless provided the requested records.  That evening, Agent Garver again called Victim 1 to obtain the exact time the threatening voice mail was left and learned it was 5:07 p.m.  Based on Agent Garver's review of Victim 1's Verizon toll records, the threatening call came from (716) 207-XXXX.  The Verizon records showed an outgoing call to Victim 1's phone that went to voice mail at 5:07 pm.

On February 6, 2020, Agent Garver learned that telephone number (716) 207-XXXX belonged to T-Mobile, and on that date, a subpoena was issued to T-Mobile that requested subscriber and toll records for that telephone number.  The same day, Agent Garver spoke to an official at T-Mobile who told him that T-Mobile would provide tolls records as soon as possible.  However, T-Mobile also shared that (716) 207-XXXX was a pre-paid TracFone, and, as such, T-Mobile did not have any subscriber records in their holdings for the number.

On February 7, 2020, a subpoena was issued to TracFone that requested subscriber and toll records for (716) 207-XXXX for the time period of August 1, 2019, to February 7, 2020.  The same day, TracFone provided the FBI with the requested records.  The subscriber records were limited but included a date of birth that matches the defendant's, a zip code of the town where the defendant resides, and a specific AOL email address linked to the account, pel[XXX]@aol.com.  FBI Staff Operations Specialist Kimberly Smith searched for and found research papers online that were authored by LUBIENECKI and included pel[XXX]@aol.com in his contact information.  Smith then used a subscription based search database to identify phone number (716) 649-XXXX as LUBIENECKI's possible home phone number.  The toll records show 23 contacts between (716) 207-XXXX and (716) 649-XXXX with the first being August 5, 2019, and the most recent being January 29, 2020.  Additionally, toll records show 20 contacts between (716) 207-XXXX and (716) 655-XXXX which is believed to be the work telephone number for LUBIENECKI's wife, who worked at Christ the King Seminary at the time.

During Agent Garver's communications with Victim 1, Victim 1 stated that he had also received harassing voicemails in the past, including on August 20, 2019, August 26, 2019, November 15, 2019, and December 4, 2019.  Based on a review of the toll records associated with (716) 207-XXXX, Agent Garver found 11 total outgoing phone calls from (716) 207-0659 made to Victim's phone, including on the aforementioned dates.  For the voicemail received on August 20, 2019, the caller stated, among other things, "… nice going, asshole, you're a real fraudulent reporter."  It should be noted that on August 20, 2019, Victim 1 reported on allegations by a former seminarian that the Diocese suppresses the truth in

relation to sexual abuse.  For the voicemail received on August 26, 2019, the caller stated, among other things, "… are you going to report on that, or are you just one of these asshole journalists cause you think you'll get a Pulitzer for doing crap, … false reporting, I hope the FBI comes after you too."  For the voicemail received on November 15, 2019, the caller stated, among other things, "So Malone is still Bishop … and you're still a bad Catholic and a horrible reporter.  You ought to get a job at Wal-Mart, that's about the best you'll do. I hope to God I don't see you walking around [TOWN]."  It should be noted on November 15, 2019, Victim reported on a report that the resignation of the Bishop of the Diocese was imminent.

For the voicemail received on December 4, 2019, the caller stated, among other things:

> Oh, you must be so happy. You destroyed the Diocese of Buffalo and Bishop Malone. Oh, you must be so proud. You're a piece of shit, you really are a piece of shit. You're not a journalist … and you don't know how to be a journalist. And the way you keep playing on these ex-seminarians who are assholes. You're one of the biggest assholes going. You must be so proud of how you destroyed everything. I'm gonna destroy your career.

It should be noted that on December 4, 2019, Victim 1 reported on the resignation of the Bishop of the Diocese.  Based on a review of the toll records, Agent Garver was able to determine that each of these calls originated from telephone number (716) 207-XXXX.  Based on the multiple voicemail messages he had received, Victim 1 reported to Agent Garver that he was in fear for his life and had suffered substantial emotional distress.  Indeed, based on the death threat voicemail left for Victim 1 on February 4, 2020, Victim 1 temporarily relocated himself and his family to a hotel, and was provided with bodyguards by his employer.

On February 10, 2020, Agent Garver listened to a publically available speech given by the defendant on September 22, 2017, about John Timon, the first Bishop of Buffalo.  Based

on Agent Garver's review of that speech, he believed that the individual who left Victim 1 the voicemail messages referenced above was the defendant.   During Agent Garver's communications with Victim 1, Victim 1 also advised that two other individuals (hereinafter "Witness 1" and "Witness 2") also received harassing voicemails from an unknown number. Witness 1 and Witness 2 shared their phone numbers and the voicemails they received with Victim 1, who then shared them with Agent Garver.  With respect to Witness 1, on December 4, 2019, Witness 1 received a voicemail message in which the caller stated, among other things, "… you destroyed a good bishop, a good man. You must be so proud of being such an asshole. Leave the priesthood or we'll get you."  With respect to Witness 2, on December 4, 2019, Witness 2 received a voicemail message in which the caller stated, among other things, "… you must be so proud. You got rid of a good man. I love the bishop and now you got rid of him … such an asshole. I hope you burn in hell."  Analysis of the toll records show that both harassing voicemails originated from telephone number (716) 207-XXXX, and were placed a 2:52 p.m. and 2:51 p.m., respectively.

On February 12, 2020, the defendant was arrested on a criminal complaint.  At the time of his arrest, the defendant agreed to an interview and waived his Miranda rights.  During the interview, the defendant stated his cell phone number is (716) 207-XXXX and that he is the only one who used the phone.  The defendant consented to a search of his cell phone, however, all call history had been cleared from the phone.  The defendant did not want to discuss the phone calls made to Victim 1 during his interview.

On June 2, 2020, a Federal Grand Jury returned a one-count Indictment charging the defendant with cyberstalking, in violation of Title 18, United States Code, Section 2261A(2). Throughout the pretrial stage of these proceedings, the government has maintained a liberal discovery policy, and has provided the defendant with significant discovery, including all voicemails left for Victim 1 and other witnesses, toll records from T-Mobile and TracFone, witness statements, audio and video of the defendant's post-arrest statement, text messages involving Victim 1, emails involving Victim 1, search warrant documents, and news videos and articles authored by Victim 1.

On July 3, 2020, the defendant filed the instant pretrial motion (hereinafter "Motion") seeking dismissal of the Indictment and a Bill of Particulars. *See* Dkt. #14. The following is the government's response to the defendant's Motion.

## ARGUMENT

### A.   THE DEFENDANT'S MOTION TO DISMISS FOR FACIAL INSUFFICIENCY HAS NO BASIS IN LAW AND SHOULD BE DENIED

The defendant argues that the Indictment should be dismissed because it does not include any factual allegations regarding the "course of conduct" the defendant is alleged to have engaged in. *See* Dkt. #15, pp. 1-7. The defendant's motion should be denied because the Indictment contains a sufficient factual basis to fairly inform the defendant "of the charge against which he must defend," and "enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974). The Federal Rules of Criminal Procedure advise that an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged ...." Fed.

R. Crim. P. 7(c)(1).  The Second Circuit has repeatedly confirmed that "an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992) (*quoting United States v. Tramunti*, 513 F.2d 1087, 1113 (2d Cir. 1975)).  "An indictment that does not set out all of the essential elements of the offense charged is defective," *United States v. Gonzalez*, 686 F.3d 122, 127 (2d Cir. 2012), however, "[a]n indictment … need not be perfect, and common sense and reason are more important than technicalities.  *United States v. De La Pava*, 268 F.3d 157, 162 (2d Cir. 2001).

Using the standard articulated above, there is no question that the Indictment satisfies the pleading requirements of Rule 7.  A plain reading of the Indictment unequivocally sets forth the required elements of cyberstalking offense, and provides a date range for the conduct and identifies the victim of the offense.  Although the defendant argues that the Indictment should contain additional factual specificity, that argument has been rejected by other courts analyzing the cyberstalking statute.  Specifically, in *United States v. Bowker*, 372 F.3d 365, 376 (6th Cir. 2004) (*cert. granted, vacated on other grounds*, 543 U.S. 1182 (2005)), the defendant argued that various counts of the indictment, including a cyberstalking offense, were facially insufficient because they lacked factual specificity.  After reviewing the indictment, the court noted that because "the indictment stated all of the statutory elements of the offenses, and because the relevant statutes state the elements unambiguously, the district court properly denied Bowker's motion to dismiss Counts 1, 2 and 4 of the indictment."  *Id.* at 377.  *See also United States v. Wills*, 346 F.3d 476, 489 (4th Cir. 2003) ("Because the indictment tracks the language of 18 U.S.C. § 2261A (the interstate stalking statute) and properly alleges each

7

element of the statute, the indictment is valid on its face."); *United States v. Fitzpatrick*, 2018 WL 1940407, at *5 (D.N.M. Apr. 23, 2018) (denying a motion for a bill of particulars in a cyberstalking case and noting that "the Government need not set forth the specific communications that will be presented at trial or the factual proof."); *United States v. Angeli*, 2017 WL 4573753, at *2 (M.D. Pa. Oct. 13, 2017) (holding that because "the indictment substantially tracks the language of the stalking statute under which Angeli was charged," the defendant was put on "sufficient notice of the elements of the crime he was charged with and allows him ample opportunity to prepare his defense to said crime."); and *United States v. Sayer*, 2012 WL 1714746, at *9 (D. Me. May 15, 2012), (*aff'd*, 748 F.3d 425 (1st Cir. 2014)) (noting that "[a]lthough there is little factual detail in Count One of the Indictment, factual detail is not required," and holding that because the indictment set forth all of the elements, it was sufficient).

In *United States v. Ackell*, 2016 WL 6407840, at *2 (D.N.H. Oct. 28, 2016) (*aff'd*, 907 F.3d 67 (1st Cir. 2018)), the court specifically addressed the 5th Amendment argument advanced by the defendant in the present case, and whether *Russell v. United States*, 369 U.S. 749 (1962) supported dismissal of the Indictment.  Holding that the indictment in *Ackell* was not deficient, the court noted that the charging language "informs Ackell of the timeframe of his allegedly culpable conduct, where the conduct took place, whom he contacted during that course of conduct, and the means of that contact—'text messages, digital images, and other electronic communications.'"   *Id.* at *3.  Although the court in *Ackell* did order a bill of particulars, the "court did not order the bill of particulars in an attempt to cure the indictment; rather, it was to assist Ackell in preparing his defense and to minimize the risk of double

jeopardy by clarifying which of his communications with the victim during the relevant period are subject to the indictment."  *Id.*

Therefore, because the one-count Indictment fully sets forth the elements of the offense of cyberstalking, and includes detail as to the time period involved, the victim targeted, and the mechanism used to commit the offense, the defendant's motion to dismiss the Indictment of facial insufficiency grounds should be denied.

**B.     THE DEFENDANT IS NOT ENTITLED TO A BILL OF PARTICULARS**

In his Motion, the defendant moves for a bill of particulars. *See* Dkt. #15, pp. 7-11. However, the defendant's request is unjustified given the detail provided in the Indictment and the substantial, organized, and indexed discovery that has already been provided by the United States.

A bill of particulars "is not a discovery tool and is not intended to allow defendants a preview of the evidence or the theory of the government's case." *United States v. Guerrerio*, 670 F.Supp. 1215, 1225 (S.D.N.Y. 1987) (*citing United States v. Andrews*, 381 F.2d 377, 377-78 (2d Cir. 1967) (*per curiam*); *United States v. Remy*, 658 F.Supp. 661, 670 (S.D.N.Y. 1987)).  The government is not obligated to disclose either the manner in which it will attempt to prove the charges or the precise manner in which the defendant committed the crime charged. *See id.*

> While it is within this Court's sound discretion to order the filing of a Bill of Particulars, the burden is upon defendants to show that non-disclosure of the requested particulars would lead to prejudicial surprise at trial or would

adversely affect defendants' rights. Any particularization confines the
Government's proof to the particulars furnished.

*United States v. Anguiera*, No. 11CR116S, 2012 WL 1232096, at *2 (W.D.N.Y. Apr. 12, 2012)

(*citing Wong Tai v. United States*, 273 U.S. 77, 82 (1927), *United States v. Glaze*, 313 F.2d 757,

759 (2d Cir. 1963); *United States v. Murray*, 297 F.2d 812, 819 (2d Cir. 1962), *cert. denied*, 369

U.S. 828 (1962)).  In exercising this discretion, the Court can consider such factors as: (1) the

complexity of the charges, (2) the clarity and level of detail in the indictment, and (3) the

degree of discovery available to the defendant. *United States v. Santiago*, 174 F.Supp.2d 16, 34

(S.D.N.Y. 2001) (*citing United States v. Shoher*, 555 F.Supp. 346, 349 (S.D.N.Y. 1983)).

Moreover, "a bill of particulars is not necessary where the government has made sufficient

disclosures concerning its evidence and witnesses by other means." *United States v. Ojeda*, 412

Fed. Appx. 410, 411 (2d Cir. 2011) (citation omitted); *see also United States v. Bortnovsky*, 820

F.2d 572, 574 (2d Cir. 1987) ("[I]f the information sought by defendant is provided in the

indictment or in some acceptable alternate form, no bill of particulars is required.").


Here, the level of detail contained in the Indictment alone serves as an adequate basis

to deny the defendant's motion for a bill of particulars. Where a charging document, such as

the Indictment, identifies all the particulars of the charged crimes, such as the date range for

the offense, the elements of the offense charged, the manner and methods used to commit the

violation, the victim of the offense, and the statutory citations for the violations, the Court is

well within its discretion to deny a motion for a bill of particulars. A careful review of the

charging document reveals sufficient information for the defendant to adequately prepare for

trial.  Moreover, the present charge is not overly complex, in that it alleges that over an

approximately five-month period, the defendant engaged in a course of conduct directed at

Victim 1.   The count provides a precise statutory citation to the crime charged.   The Indictment contains all of the necessary details needed for the defendant to prepare for trial, and that level of precision alone is a sufficient basis for this Court to deny the defendant's demand for a bill of particulars. *See Santiago*, 174 F.Supp.2d at 36. This coupled with the amount and organized nature of the discovery countenances denying the defendant's request for a bill of particulars.

Moreover, if there has been full disclosure by the government, as there has been in the instant case, the need for a bill of particulars is obviated. *See Santiago*, 174 F.Supp.2d at 35-36 (holding that a court should also consider the availability of other sources of information to the defendant, including the discovery provided, when determining whether a bill of particulars should be issued); *United States v. Chalmers*, 410 F.Supp.2d 278, 286 (S.D.N.Y. 2006) ("[T]he Government has provided extensive discovery, minimizing the need for a bill of particulars ...."); *United States v. Kemp*, No. CRIM.A.04 370, 2004 WL 2757867, at *8 (E.D. Pa. Dec. 2, 2004) (collecting cases) ("Courts are especially reluctant to direct the filing of a bill of particulars when the government has provided the defendant with extensive pretrial discovery"); *United States v. Cowan*, No. 3:09 CR 37 KSF, 2009 WL 2613950, at *6 (E.D. Tenn. Aug. 24, 2009) (denying the defendant's request for a bill of particulars on the basis that the government turned over substantial discovery on a disk that facilitated review of information thereby obviating need for bill of particulars). The need for a bill of particulars is further undermined where an index and/or computer search modalities are provided that facilitate the review of even voluminous discovery. *United States v. Ferguson*, 478 F.Supp.2d 220, 227 (D. Conn. 2007) ("Given the degree of detail in the indictment and the government's

provision of searchable discovery databases and a list of its key documents, the defendants have not proven that they require more particularization to adequately prepare their defenses, avoid prejudicial surprise at trial, and protect against future double jeopardy."); *see also United States v. Kahale*, 789 F.Supp.2d 359, 375-77 (E.D.N.Y. 2009) (denying request for bill of particulars where government provided an index for its discovery).

Here, the government has been very cooperative in providing voluminous and computer searchable discovery prior to the deadline set by the Court. The government facilitated this production by providing a USB drives loaded with electronic discovery. The government also endeavored to provide defense counsel with an index of these materials to allow for a more efficient review of the discovery provided. As in all of the cases cited above, the government has been cooperative in furnishing discovery and in guiding the defendant in reviewing the same; the discovery has been provided in an indexed and electronically searchable format; and most, if not all, of the information the defendant seeks through a bill of particulars is already available to him in this discovery. As such, the voluminous, searchable discovery already provided by the government obviates the need for any additional particularization.

The defendant has made two specific requests for particularization. First, the defendant wants an identification as to the specific electronic service/facility of commerce the defendant used to commit the offense, and second, a description of each act that constitutes the course of conduct alleged in the Indictment. As to both requests, the discovery provided to the defendant has already answered these requests. For the first request, the discovery

material provides all of the details regarding the phone calls placed by the defendant, using his cell phone to Victim 1 and the other witnesses in the case.  As to the course of conduct, all of the voicemail messages left by the defendant to Victim 1 have been provided to the defendant, along with toll logs showing all calls made by the defendant to Victim 1.  To the extent that the defendant is arguing that the "course of conduct" is an element of a cyberstalking offense, or that each act of the course of conduct must be criminal in nature,[1] the defendant is mistaken.  In *United States v. Ackell*, 907 F.3d 67, 78-80 (1st Cir. 2018) (*cert. denied*, 139 S. Ct. 2012 (2019)), the defendant argued that the district court erred by failing to give a unanimity instruction as to what specific acts formed the course of conduct alleged.  In rejecting the defendant's argument, the court held that "a unanimity instruction was only necessary [] if the specific acts making up Ackell's course of conduct were 'elements' of the offense," … "[a]nd they plainly are not."  *Id.* at 79.  Moreover, the court noted that because "§ 2261A contains no requirement that the acts making up the course of conduct themselves be illegal, this cuts sharply against the notion that those underlying acts are elements and not brute facts."  *Id.* at 80.  The Third Circuit came to a similar conclusion in *United States v. Gonzalez*, 905 F.3d 165, 186 (3d Cir. 2018) (*cert. denied*, 139 S. Ct. 2727 (2019)), holding:

> A specific unanimity instruction was also not needed as to the course of conduct requirement.  The jury is not required to agree on which specific acts were part of the stalking campaign. The statute defines the required "course of conduct" as "a pattern of conduct composed of 2 or more acts, evidencing a continuity of purpose." 18 U.S.C. § 2266(2). The defendants argue that because, to be convicted of cyberstalking, they must have committed two or more acts as part of the course of conduct, the jury needs to agree on the specifics of which acts were committed with the requisite criminal intent.

> However, the two or more specific acts that constitute a course of conduct are not distinct elements of the offense.  The crux of the course of conduct requirement is that the defendants have engaged in "a pattern of conduct,"

---

[1] In his motion, the defendant in passing states that each action of a course of conduct must be "undertaken with the requisite criminal intent."  *See* Dkt. #15, p. 2.  That is an incorrect statement of law.

which "evidenc[es] a continuity of purpose." Id. § 2266(2). This language is significant. The focus is not on the individual acts as separate, distinct events, but instead on the purpose and scope of the defendants' pattern of stalking conduct as a whole. *See United States v. Conlan*, 786 F.3d 380, 386 (5th Cir. 2015) ("[T]he statute's intent requirement 'modifies the cumulative course of conduct as a whole,'" and avoids criminalizing otherwise innocent acts) (*quoting [United States v.] Shrader*, 675 F.3d [300,] at 311-12 [4th Cir. 2012]). Nothing in the statute requires that the individual acts be criminal violations on their own. The statute does not require that a defendant commit multiple criminal acts to engage in a course of conduct.

In *United States v. Shrader*, 675 F.3d 300, 311–12 (4th Cir. 2012), the Fourth Circuit discussed the impact a course of stalking can have on a victim, holding that the § 2261A statutory scheme

reflects a clear understanding on the part of Congress that while severe emotional distress can of course be the result of discrete traumatic acts, the persistent efforts of a disturbed harasser over a period of time … can be equally or even more injurious. The cumulative effect of a course of stalking conduct may be greater than the sum of its individual parts. To read in a requirement that each act have its own specific intent element would undo the law's protection for victims whose anguish is the result of persistent or repetitive conduct on the part of a harasser. Moreover, the statute avoids sweeping up innocent acts by requiring that the course of conduct "evidenc[e] a continuity of purpose" to cause the proscribed harm. It of course remains open to a defendant to argue that the charged acts were innocent or mistaken, and therefore do not meet the clear textual requirement that the course of conduct "evidenc[e] a continuity of purpose," but that is an argument that sounds in sufficiency of the evidence, not vagueness.

Therefore, because particularization is not required in a § 2261A prosecution, *see Fitzpatrick*, 2018 WL 1940407, at *5, and substantial discovery has already been provided setting forth the information the defendant seeks, this Court should deny the defendant's motion for a bill of particulars.

14

## <u>CONCLUSION</u>

For the foregoing reasons, the government respectfully submits that the defendant's motion to dismiss and for particularization should be denied.


DATED: Buffalo, New York, July 17, 2020.

Respectfully submitted,

JAMES P. KENNEDY, JR.
United States Attorney

***S/ AARON J. MANGO***

BY:   _____

AARON J. MANGO
Assistant U.S. Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
(716) 843-5882
aaron.mango@usdoj.gov