UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA

v.

PAUL E. LUBIENECKI,   Cri. No. 20-CR-77A

　　　　　　　Defendant.
_____

# DEFENDANT LUBIENECKI'S CHARACTER LETTER SUBMISSION

　　　　　　　　　　　　　　　　　　　　**/s/ Rodney O. Personius**
　　　　　　　　　　　　　　　　　　　　Rodney O. Personius, Esq.
　　　　　　　　　　　　　　　　　　　　PERSONIUS MELBER LLP
　　　　　　　　　　　　　　　　　　　　*Attorneys for Defendant*
　　　　　　　　　　　　　　　　　　　　　PAUL E. LUBIENECKI
　　　　　　　　　　　　　　　　　　　　2100 Main Place Tower
　　　　　　　　　　　　　　　　　　　　350 Main Street
　　　　　　　　　　　　　　　　　　　　Buffalo, NY  14202
　　　　　　　　　　　　　　　　　　　　(716) 855-1050
　　　　　　　　　　　　　　　　　　　　rop@personiusmelber.com

c:       AUSA Aaron Mango
         AUSA Charles Kruly
         U.S. Attorney's Office
         Federal Centre
         138 Delaware Avenue
         Buffalo, NY  14202

         U.S. Probation Officer Lisa Ferraro
         U.S. Probation Office
         2 Niagara Square
         Buffalo, NY  14202

## INTRODUCTION

Included with this submission are character letters that have been prepared in reference to the defendant, Paul Lubienecki. The overarching goal of this pleading is to provide a credible, substantiated explanation as to the root cause of Mr. Lubienecki's offensive behavior that crossed the line between right and wrong, and forms the basis for his criminal conviction. It is our intention to file a separate submission on or before November 2, 2021 that will formally make application for the imposition of a non-*Guidelines* sentence in this case. When all of the surrounding circumstances are understood, and with due consideration to the seriousness of the underlying offense, this is not a case where a period of incarceration is necessary in order to achieve the goals of sentencing as set forth in §3553 of the Federal Criminal Code.

We will begin this presentation by briefly examining the offense conduct, and identifying the triggers that caused Mr. Lubienecki to act upon his anxiety and fear in a fashion that rose to the level of violating federal law. Thereafter, we will endeavor to provide a portrait of the defendant, which will serve to explain why he chose to leave at first harassing and then increasingly more threatening voicemail messages with former WKBW news reporter Charlie Specht. What will be shown is that Paul Lubienecki and his wife, Teresa, were and are far more than mine run Catholics who attend Mass on a weekly basis and, from time to time, volunteer their services to the parish. They are devout Catholics whose lives during the period in question revolved not only spiritually, but also vocationally and socially, around the Church and, in particular, the now shuttered Christ the King Seminary in East Aurora, NY. At precisely the time the media reporting, including that of Mr. Specht, about the clergy sexual abuse scandal, shifted its focus to the Seminary, Mr. Lubienecki began leaving voicemail messages with Mr. Specht. Then, approximately five months later, when

the sudden announcement was made by the media, including Mr. Specht, rather than by the Diocese, that the Seminary was being closed, Paul left a death threat on the voicemail of Mr. Specht. The message was neither premeditated nor the product of reasoned thought. The evidence shows that the message was left within minutes of the Specht newscast regarding the Seminary closure decision. These circumstances do not excuse Mr. Lubienecki's conduct, but understanding the central importance of the Seminary to the lives of the defendant and his wife, Teresa, does provide important context to the message left by him for Mr. Specht on February 4, 2020.

## OFFENSE CONDUCT

The Pre-Sentence Investigation Report ["PSR"], as revised on October 25, 2021, includes a summary of the messages left by Mr. Lubienecki on the voicemail of Mr. Specht. Paragraphs 18 and 19 of the PSR disclose that the first two messages were left by the defendant on August 20 and August 26, 2019. On the day of the first message, August 20, 2019, Mr. Specht issued a news report that was critical of the Seminary, alleging sexual harassment of a then seminarian by a Catholic priest. The seminarian who was the source of this report was quoted in the article as demanding both that the Seminary be shut down and that then Bishop Malone resign. Earlier reports had disclosed the sexual orientation of this seminarian. Aware of this circumstance, Mr. Lubienecki crudely alleged in each message that Mr. Specht's brother, who is believed to have then been a Franciscan seminarian, had the same sexual orientation. While not in and of themselves criminal in character, we do acknowledge that both messages were highly offensive and wholly inappropriate. What is nonetheless noteworthy is that Paul's initiation of the course of conduct which forms the basis for

his conviction coincided with the publication of a derogatory news report having reference to the Seminary, and advocating that it be closed. A copy of this report is annexed as **Exhibit S**.

The PSR, at paragraph 20, discloses that the third voicemail message left by the defendant was on November 15, 2019. Once again, on the same date, Mr. Specht had filed a report setting forth the verbatim content of a telephone call he had recorded with then Bishop Malone, who was at the time at the Vatican in Rome, Italy meeting with Pope Francis. As the PSR indicates, the undercurrent of the report was that the Bishop's resignation was imminent. In his message, Mr. Lubienecki included a veiled reference to having knowledge that Mr. Specht was then residing in East Aurora, NY. We acknowledge that this was inappropriate. While Mr. Specht had a practice of criticizing former Bishop Malone's handling of the clergy sexual abuse scandal, Paul took strong exception to the secret recording of this telephone conversation, believing it to have been improper ethically, if not legally. It was for this reason that his message included the reference to East Aurora. The PSR, at paragraph 21, reveals that a second message was left on the same date, November 15, 2019. This message was, at most, harassing. A copy of Mr. Specht's November 15, 2019 news report is annexed as **Exhibit T**.

Paragraph 22 of the PSR discloses that a fifth voicemail message was left by the defendant with Mr. Specht on December 4, 2019. This message coincided with a news report announcing the resignation of former Bishop Malone. The content of the voicemail left by Mr. Lubienecki was once again harassing and uncomplimentary of Mr. Specht's reporting style. Included within the article reporting on the resignation was a reference to the failure of the former Bishop to take definitive action in response to the above referenced allegations regarding a priest's sexual harassment of a

seminarian. This is the reason for the reference to "ex-seminarians" in the voicemail left by the defendant. A copy of Mr. Specht's December 4, 2019 news report is annexed as **Exhibit U**.

Finally, the PSR addresses the last voicemail left by the defendant on February 4, 2020 at paragraphs 12 and 13. It was this message that contained a specific threat to kill Mr. Specht. As indicated above, on the very same date, along with other members of the media, Mr. Specht had reported on the closure of the Seminary. A copy of this report is annexed as **Exhibit V**. In the report, Mr. Specht stated that "the seminary was blamed for a 'sexual culture' among Buffalo Diocese priests that has resulted in the ordination of dozens of pedophiles and others who are alleged to have committed sexually assaultive misconduct with adults." Against the backdrop of the centrality of the Seminary to Paul's spiritual, vocational, and social existence; due to the fact this news was being announced through the media rather than by the Diocese; in light of the reference in the Specht article to the Seminary as the cause of the clergy sexual abuse scandal; and, in the face of the realization that his wife, Teresa, was about to lose her 33 year position as a librarian at the Seminary, Paul reacted without taking any time to reflect by leaving a categorical death threat that we openly acknowledge violated federal law. We nonetheless reiterate that, from a sentencing perspective, the context in which this message was left is of paramount importance.

Mr. Lubienecki also left messages on December 4, 2019 making reference to the resignation of former Bishop Malone with two witnesses, each of whom had formerly worked closely with the Bishop prior to their resignations. Once again, we recognize the harassing nature of each message.

There is also a discussion at paragraphs 26 and 27 of the PSR of additional harassing activity involving a photograph of Mr. Specht's brother, as well as letters received by the brother and one of the witnesses referred to immediately above. Paul denies any involvement in these activities. As

stated in paragraph 27 of the PSR, the Government has not been able to identify the party who is responsible for the actions involving the picture of Mr. Specht's brother or the two referenced letters. At the time, there was at least one other individual who was suspected of harassing Mr. Specht. On February 4, 2020, Mr. Specht had initially expressed the belief that this individual, himself a priest, had been responsible for the death threat voicemail received on that date. While we now know that it was Mr. Lubienecki who left that message, it is important to recognize that there was another individual, within this timeframe, who was in some fashion harassing Mr. Specht and may well have been responsible for the photograph and letters referred to in paragraphs 26 and 27 of the PSR. Copies of Mr. Specht's email and the attachments that accompanied it are annexed as **Exhibit W**.

## DESCRIPTION OF EXHIBITS

Included as exhibits to this submission are 15 character letters, a letter prepared by Mr. Lubienecki, 2 reports by mental health professionals, a copy of the defendant's resume, letters from charities where Paul has donated his time, and the news reports and email by Mr. Specht that are discussed above. The character letters have been placed in alphabetical order for ease of reference, beginning at **Exhibit E**.

Annexed as **Exhibit A** is a letter prepared by Mr. Lubienecki, which is addressed to Mr. Specht. It constitutes a formal apology for his harassing, threatening and, in its totality, illegal conduct. The original of this correspondence will be brought to the sentence proceeding with the intention of presenting it to Mr. Specht. We understand he may or may not feel comfortable accepting it; however, it was important to Paul to place his embarrassment and regret for the effects of his misconduct upon Mr. Specht and his family in a formal statement.

**Exhibit B** consists of a letter report prepared by Licensed Psychologist Michael E. Rutter, Ph.D. regarding his assessment of Paul's psychological functioning based upon meeting with the defendant on 22 occasions, either in person or virtually, and on 1 occasion with his wife, Teresa Lubienecki. Another letter report, annexed as **Exhibit C**, was prepared by Licensed Clinical Social Worker Joseph J. Monaco. This report addresses his ongoing contacts with Mr. Lubienecki regarding what he describes as Paul's "poor impulse control and anger management." Both reports provide favorable prognoses regarding the defendant.

**Exhibit D** consists of a letter prepared by Teresa Lubienecki who, as noted, is Paul's wife. As previously stated, she worked as a catalog librarian and then as the Library Director at Christ the King Seminary over a period spanning 33 years.

**Exhibit E** is a letter written by Rev. Charles Amico, Ph.D., who is a retired priest of the Catholic Diocese of Buffalo. He served as an instructor at the Seminary between 1990 and 2018. It was during this period that he became well acquainted with Paul and his wife.

**Exhibit F** is a letter written by Jane Brady, who worked for 16 years in the library at the Seminary with Teresa.

The letter annexed as **Exhibit G** was prepared by Daniel A. Cohen, who is an Associate Professor of History at Case Western Reserve University. He also serves as the Director of Graduate Studies in the History Department. He first became acquainted with Mr. Lubienecki in 2008 when Paul was pursuing his doctorate in history. They have remained friends since that time.

**Exhibit H** is a letter prepared by John J. Grabowski, Ph. D., another professor at Case Western Reserve University. He first met Paul in 2008, and then served as his primary advisor on his doctoral dissertation, which was defended and completed in 2013.

**Exhibit I** consists of a letter written by Lisa Insalaco. She is a sister-in-law to Paul, and is married to Teresa Lubienecki's brother. Her sister, Michelene Insalaco, has also prepared a letter on Paul's behalf, which is annexed as **Exhibit J**.

**Exhibits K** and **L** consist of letters written by Paul's nephew, Graham Killian, and Paul's sister, Marie J. Killian. Marie is eight years older than the defendant.

**Exhibit M** is a letter prepared by Rev. John P. Mack, Th.M., S.T.L., who also formerly served on the faculty at Christ the King Seminary. His initial introduction to Paul was in the library where both were conducting research. From this encounter, they developed a lifelong friendship.

**Exhibit N** consists of a letter prepared by Paul's brother-in-law, Eugene Mattioni. Mr. Mattioni is the husband of Paul's sister, Marie J. Killian. Mr. Mattioni is an attorney, now retired, who serves as the Chief Executive Officer of the Maritime Academy Charter School in Philadelphia, PA.

Annexed as **Exhibit O** is correspondence prepared by Rev. Charles J. O'Connor, OFM, who is a Franciscan priest presently on assignment in Boston, MA. Between 1983 and 2002, he served as a professor at Christ the King Seminary. In this capacity, he became acquainted with Mr. Lubienecki in 1986, and they have remained friends ever since.

**Exhibit P** is a letter prepared by Gabriel Scarfia, O.F.M., S.T.D. Now retired, Fr. Scarfia worked in the past at Christ the King Seminary teaching graduate theology. At two different points in time, he acted as an instructor for Paul.

Annexed as **Exhibit Q** is correspondence prepared by Rev. Walter J. Szczesny, a priest now serving as Pastor at Our Lady of Peace Parish in Clarence, NY. He was present for the marriage of Paul and Teresa in 1990, and has remained in contact with both of them since that time.

Finally, annexed as **Exhibit R** is a letter prepared by Andrea Wojcik, who is Mr. Lubienecki's cousin. She has known Paul since they were children and remarks in her letter that they "have had a good and constant relationship over the years."

Three additional letters are included with the accompanying exhibits. **Exhibit Y** is correspondence prepared by FeedMore WNY. The letter attests to volunteer service by Paul with the former Meals on Wheels program within the period 2012 through 2020.

**Exhibit Z** consists of three documents having reference to Paul's service as a Eucharistic Minister for Mercy Hospital of Buffalo during the period September 2015 through August 2016. At the time, Paul acted in the role of a Certified Pastoral Educator. The third document included with this exhibit is an evaluation, which includes both his own self-assessment and a comparative assessment by personnel involved in the program.

Annexed as **Exhibit AA** is a letter prepared by the Little Portion Friary, Buffalo, which documents service on Paul's part one day per week during the period November 9, 2020 through August 6, 2021, when the facility closed temporarily for maintenance and repairs. The letter describes Paul's duties and includes an assessment of his work performance.

Of note, following considerable effort, Mr. Lubienecki has finally been able to once again find employment within the past several weeks. He now works as a retail sales associate at a local LL Bean store.

## SENTENCING FACTORS

The provided character letters, coupled with the reports of Dr. Rutter and Mr. Monaco and the correspondence confirming Paul's voluntary service, offer in their totality important insights

regarding both who he is as a person and how he came to engage in the conduct forming the basis for his conviction. Those factors are addressed below under separate subheadings.

### A. Upbringing

The letter prepared by the defendant's sister, Marie Killian, recalls that their family had a very traditional Catholic upbringing. Faith and the Church were consistently interwoven in their daily lives. The family's focus was on education, music, scouting, and the Church. Day trips were often taken to other churches and to shrines within driving distance. As well, volunteering and charitable endeavors were encouraged.

Paul's cousin, Andrea Wojcik, remembers him as having been a very studious child. His spare time activities growing up consisted of serving as an altar boy, playing the organ, and participating in Cub Scouts.

Mr. Lubienecki was raised in an environment where there was a heavy focus upon the Church and traditional church-related activities.

### B. Adult Interests and Pursuits

Mr. Lubienecki's resume is provided as **Exhibit X**. What is shown is that he has earned four post-graduate degrees, including a BA in History from Temple University, Masters degrees in both Pastoral Ministry and History/Museum Studies, and a Ph.D. in History (from Case Western Reserve University). Of note, his doctoral dissertation focused upon the American Catholic Diocesan Labor Movement. As far as his work-related activities, all have involved teaching and instruction at both the high school and college levels, including Christ the King Seminary. Reflected as well in his

9

resume is ongoing research, mostly involving religious topics, and activities involving the management and operations of area museums. He has published three books and lectured on more than a dozen occasions, principally on subjects related to either religion or architecture. He has served as a panelist or lecturer on another 15 occasions, once again with an emphasis on religion or architecture.

These experiences are consistent with how he is perceived by his former doctoral dissertation advisor, Dr. Grabowski. He commends Paul for his commitment, industry, research capabilities, and written work product. In his words, Paul "was hard working, timely in submitting assignments, persistent, and committed to teaching history rigorously and well."

Teresa Lubienecki recounts in her correspondence that her husband has spent a lifetime in the pursuit of educational advancement. She describes him as a devout Catholic who is committed to chaplaincy, and notes that part of his routine is to travel to the Abby of the Genesee in Piffard, NY for spiritual renewal. She portrays their life together as being focused upon cultural pursuits, such as attending lectures, the Buffalo Philharmonic, the Chautauqua Institute, and architectural tours. She reports, as well, that they are devoted bird watchers.

### C. Charitable and Volunteer Activities

We have reported above about Mr. Lubienecki's charitable work with the former Meals on Wheels Program, at Mercy Hospital in South Buffalo, and with the Little Portion Friary. In addition to these pursuits, sister-in-law Lisa Insalaco describes in her letter the extraordinary relationship which exists between her daughter, Emily, and the defendant. At two years old, Emily suffered a SIDS episode, which left her with severe cerebral palsy, brain damage, and legal blindness.

Ms. Insalaco and other family members report in their letters that the single most important person in Emily's life, aside from her parents, is Paul Lubienecki. They have a special bond. He showers her with telephone calls and gifts. When they are together, he sings to Emily. Lisa Insalaco describes her heart as being "full" when the defendant is together with Emily.

Both Paul's sister, Marie Killian, and his nephew, Graham Killian, emphasize Paul's loyalty to his now deceased parents. Notwithstanding that he resided in Western New York, and his parents lived outside of Philadelphia, PA, Paul was always in regular contact with them, particularly in the later stages of their lives. Sister Marie specifically recalls that, in the final months and weeks of her mother's life, Paul would sleep on the floor next to their mother's bed in order to provide her with comfort.

Even when Mr. Lubienecki resided in Philadelphia, he was committed to charitable service. Fr. O'Connor reports in his letter that one of Paul's favorite biblical passages is Matthew, chapter 25, verses 31-46, where Jesus speaks about outreach to the poor and needy. In addition to referencing the volunteer work identified above, Fr. O'Connor notes that, while residing in the Philadelphia area, Paul donated his time to St. John's Hospice.

### D.  Ties to Christ the King Seminary

We have noted above the past inseparable association of Paul and Teresa to Christ the King Seminary in all facets of their lives. In the spring 2021, Teresa prepared a lengthy presentation reflecting upon her experience as a librarian at the Seminary. Included in this writing is the following observation:

11

> Through the experience of these encounters, interactions and being part of the community at Christ the King Seminary over the years it felt like I had accompanied the students, especially the seminarians, on their journeys and contributed to their formation in a small but significant way. I believe this can be said of every person who worked at the Seminary and, perhaps, many felt the same way. All of us engaged in ministry in our daily work. All of us engaged in ministry through our interactions, collaboration and coordination in service to the mission of the Seminary.

Later in her presentation, in commenting upon the closing of the Seminary, Teresa characterizes the experience as "earth-shattering," reporting that she "was facing the loss of role/identity, relationships and community."

In his letter report, Dr. Rutter recounts Paul's similar attachment to the Seminary:

> More than just being a place of work, Christ the King Seminary was a core part of his spiritual and professional identity for nearly 3 decades. As he sees it, the Seminary was the reason he moved to Buffalo, it was where he met his future wife, and was the place where they both worked. Vocationally and spiritually, it was the center of their existence. It is impossible to overstate how scared, sad and unmoored they felt as the possibility increased that the Seminary might close. Despite their anger and sense of betrayal by the Seminary, the Buffalo Diocese and the Church itself, they remained fiercely loyal.

**Exhibit B** at 6

Fr. Amico describes Paul's association with the Seminary in a similar fashion in his correspondence. He characterizes the connection as "very strong," and notes that this was where Paul met Teresa, where he taught several courses, and where he conducted much of his scholarly research. Mr. Lubienecki's sister-in-law, Lisa Insalaco, describes the Seminary as having been "an integral part of their lives." She further comments that Paul's "level of success and self-worth were contingently tied to the Seminary."

12

The same perceptions are reflected in the correspondence prepared by Fr. O'Connor, who states that Paul and Teresa "were deeply invested in the Seminary. It was where Paul initially studied for the priesthood, where he taught, where his wife worked, where he did much of his research for his doctorate, where seminarians were trained as future priests."

### E. Closure of Seminary

The letters provided by Fr. Amico, Fr. O'Connor, Lisa Insalaco, and Eugene Mattioni all speak to the anxiety and fear experienced by Mr. Lubienecki at the specter that Christ the King Seminary might close. Fr. O'Connor characterizes this prospect as having constituted an "existential threat." Mr. Mattioni speaks to the fact that Paul was overwhelmed and demoralized at the thought the Seminary might no longer exist.

In his letter report, Dr. Rutter provides the following analysis of how the media reporting of the actual closure of the Seminary affected Paul:

> On the day of the announcement that Christ the King Seminary was closing, he became panicky and agitated. It felt like it was life or death, a perceived emergency that triggered a flight-or-fight reaction. Worried about how his wife would take the news, he frantically tried to contact her with no success. He reacted to news of the Seminary closure as if the world had crumbled. His perception was that the local media, particularly the reporter to whom he allegedly issued threats, were gleeful about the closure, an event that was utterly devastating to him. Unfortunately, his poor coping skills and inadequate ability to regulate his emotions led to his unlawful behavior.

**Exhibit B** at 7.

### F. Non-Violent Disposition

13

All of the provided letters speak to Mr. Lubienecki as having a non-violent disposition. Fr. Amico notes that he has never viewed Paul as posing a physical threat. Professor Cohen provides that Paul has a "preference for social reconciliation over conflict and enmity." Dr. Grabowski reports never having sensed that the defendant had what he describes as "an impulse to hurt anybody."

Both Lisa and Michalene Insalaco are in agreement that Mr. Lubienecki does not have violent tendencies. The same may be said of his wife, Teresa. Fr. Scarfia affirms that the defendant was "never belligerent or violent." And, his cousin, Andrea Wojcik, states that she found that Paul "has always been a gentle kind of guy, not a rough and tough guy."

### G. Harassing/Threatening Messages as an Aberration

In his correspondence, Fr. Amico states that he was "shocked" to learn of Paul's behavior. Professor Cohen observes that he found Paul's actions to be "entirely out of character." The defendant's sister, Marie Killian, uses the same description to describe her reaction. Fr. Mack characterizes the death threat message as a "one-off aberration of his personality." Brother-in-law Eugene Mattioni also refers to the conduct at issue as an aberration. As well, the defendant's cousin, Ms. Wojcik, states in her correspondence that the actions at issue "is not the Paul I know."

### H. Remorse

In his offense statement, set forth at paragraph 34 of the PSR, Mr. Lubienecki uses the words "sorry," "ashamed," and "disgusted," to describe his feelings regarding his unlawful behavior. He portrays the same overwhelming shame for his actions in his letter of apology to Mr. Specht, which accompanies this submission as **Exhibit A**. His wife, Teresa, reports that the defendant has

experienced many sleepless nights agonizing over his behavior. She states that he is filled with anguish and despair. Both Ms. Brady and Professor Cohen recall that, upon listening to recordings of his messages, Mr. Lubienecki cried. In speaking with Fr. Sczcensy, Paul once again was tearful, insisting that the messages were "not the person I am." Fr. O'Connor and Fr. Mack report that Paul is contrite and repentant, and full of remorse and regret. Fr. Scarfia states in his correspondence that the defendant "has acknowledged to me personally his great moral failure and his shameful guilt before the law."

### I. Impact of Counseling and Treatment

In his letter report, Dr. Rutter comments as follows:

> Mr. Lubienecki's functioning during the course of treatment demonstrates an increase in self-awareness and improved impulse control. He has no known incidents of aggressive or threatening behaviors. He has developed a tool box of coping strategies that he has conscientiously put into practice. Mr. Lubienecki is maintaining a healthier lifestyle, including regular exercise, time outdoors and employing meditation and intentional introspection. He is focusing on enhancing his communication skills, practicing active listening, compassion, and empathy.

**Exhibit B** at 7-8. Continuing, Dr. Rutter notes that Paul has "grown in his emotional intelligence" and "shown greater humility."

Teresa Lubienecki is in agreement with this assessment. She states that her husband is calmer, talks more, and is better able to identify the potential for conflict and disengage. Fr. Scarfia, who is explicit in noting that he in no way excuses nor minimizes the defendant's criminal behavior assures that "over the last few months that Paul's mind-set and behaviors have changed from being

a fearless advocate of the Seminary to accepting the reasoned judgment of others concerning its closure, and, above all, respecting the voices of the media, even when he disagrees with them." In a similar vein, Fr. Szczensy states that his friend has benefitted from his mental health counseling and treatment, remarking that "I have seen him make great progress in this area" (of curbing hostile feelings).

## CONCLUSION

The purpose of this submission is to separately provide the Court with character letters and to lay the foundation for the complementary application that will be filed by November 2, 2021, requesting the imposition of a non-*Guidelines* sentence. This request will primarily rely upon the fact a full and fair consideration of all relevant facts, and evaluation of the history and characteristics of the defendant, Paul Lubienecki, support the conclusion that this prosecution under 18 U.S.C. §2261(A)(2) falls outside of the heartland of cases to which the United States Sentencing Commission intends the individual *Guidelines* to apply.

Dated: Buffalo, New York
October 26, 2021.

**/s/ Rodney O. Personius**
Rodney O. Personius, Esq.
PERSONIUS MELBER LLP
*Attorneys for Defendant*
 PAUL E. LUBIENECKI
2100 Main Place Tower
350 Main Street
Buffalo, NY  14202
(716)  855-1050
rop@personiusmelber.com

c:    AUSA Aaron Mango

16

AUSA Charles Kruly
U.S. Attorney's Office
Federal Centre
138 Delaware Avenue
Buffalo, NY  14202

U.S. Probation Officer Lisa Ferraro
U.S. Probation Office
2 Niagara Square
Buffalo, NY  14202