UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA

v.                                                                Cri. No. 20-CR-77A

PAUL E. LUBIENECKI,

                Defendant.
_____

# DEFENDANT'S MEMORANDUM
# IN SUPPORT OF A VARIANCE OR
# DEPARTURE FROM THE *GUIDELINES*

Dated:  Buffalo, New York
        November 2, 2021

Rodney O. Personius, Esq.
PERSONIUS MELBER LLP
*Attorneys for Defendant*
 PAUL E. LUBIENECKI
2100 Main Place Tower
Buffalo, NY 14202
(716) 855-1050
rop@personiusmelber.com

# INTRODUCTION

Defendant Paul E. Lubienecki is scheduled to be sentenced, based upon an earlier plea of guilty to a violation of the federal cyberstalking statute, 18 U.S.C. §2261A(2), at 12:30 pm on Tuesday, November 9, 2021. Paragraph numbered 55 of the Presentence Investigation Report ["PSR"], as revised October 25, 2021, provides that, pursuant to *Guidelines* Section 2A6.2, his final offense level is 17 and his criminal history is I, leading to an imprisonment range of 24 to 30 months. It is our respectful position that full and fair consideration of the underlying facts, including a comparison of those facts to the types of cases customarily prosecuted under §2261A(2), as well as the background and characteristics of Mr. Lubienecki, justifies the imposition of a non-jail sentence. We request that the Court reach this result by means of either a variance from or departure under the *Guidelines*.

In support of this request, we ask first that the Court give appropriate weight to the information set forth in the defendant's Character Letter Submission, dated October 26, 2021 [Doc. No. 57], both in relation to the circumstances of the offense and who Paul Lubienecki is as a person. Accompanying this memorandum is a Notice of Motion and Declaration, with exhibits. Within the Declaration is a summary of known cases prosecuted under §2261A(2). What is shown by this analysis is that there is a vast, chasm-like difference between the factual backdrop of the present offense and that customarily forming the basis for a prosecution under this statute.

Both from the perspective of evaluating the merits of granting a variance and in the context of determining if a departure is appropriate, the information reflected in this summary is of critical importance. This is true because the *Sentencing Guidelines* make provision for differing treatment of matters that fall outside the "heartland" of typical cases embodying the conduct that each

guideline describes. Depending upon the circumstances, that treatment can either be favorable or unfavorable to the defendant. As set forth below and in the Declaration appended to the Notice of Motion, the "heartland" of cases contemplated by section 2A6.2 involves far graver, more serious conduct than that of Mr. Lubienecki forming the basis for this prosecution. As further support for the relief requested herein, based upon his background and characteristics, the wrongful conduct of Mr. Lubienecki constitutes an aberration.

Before the Court is a decidedly unique case, albeit a serious one, where the exercise of leniency is warranted in formulating a sentence which is sufficient, but not greater than necessary, to meet the goals of federal sentencing set forth in §3553 of the Federal Criminal Code.

## I.  THE OFFENSE CONDUCT AND BACKGROUND/CHARACTERISTICS OF THE DEFENDANT

The Character Letter Submission referenced above provides both a thorough portrayal of the defendant and a compelling explanation of the circumstances giving rise to his offense conduct.

What is shown in this submission is that, from infancy to the present, Paul Lubienecki has led a life centered around the teachings and tenets of the Catholic Church. As a child, he and his family regularly attended church, and otherwise devoted their spare time to church-related or other cultural pursuits. His older sister, Marie Killian, explains that, in addition to the Church, Paul's upbringing centered around education, music and scouting.

This perspective continued following his graduation from high school. His original determination that he would pursue a lifetime commitment to the Church as a priest brought him to Christ the King Seminary in East Aurora, NY. It was there that he was introduced to his eventual

wife, Teresa. Even after he discerned that the priesthood was not his calling, all of his educational, employment, vocational, and avocational endeavors thereafter were in some way tied to the Church. This included his courses of study, degrees, teaching assignments, research, writings, lectures, and even his social activities with Teresa. More often than not, the epicenter of his existence following his migration to Western New York from Philadelphia was the Seminary in East Aurora, where it happened that Teresa also worked as a librarian for more than three decades. It is not often that a defendant stands before the court who chooses on a regular basis to spend spare time in self-reflection at the Abbey of the Genesee in Piffard, NY. But, that is an important facet of Paul's spirituality. As his wife explains, both her own and Paul's interests gravitate toward that which is cultural in nature, such as attending lectures, classical music performances, the Chautauqua Institute, and architectural tours. Not surprisingly, their favorite pastime is birdwatching.

The previously filed Character Letter Submission also discloses a man who, from a very early age, engaged in charitable and volunteer activities. These pursuits have always been an important component of his life, beginning when he resided in Philadelphia and volunteered at a facility known as St. John's Hospice. He later served for many years at what was formerly known as Meals on Wheels of Western New York, and as a lector and certified Clinical Pastoral Educator at Mercy Hospital in South Buffalo. Most recently, his commitment to charity has led him to weekly service over the past year at the Little Portion Friary on Main Street in Buffalo,

As the earlier submission reports, his charitable nature extends to family. The special relationship with his niece, Emily, who suffers from the challenges of severe cerebral palsy, brain damage, and legal blindness, reflects upon a man of conscience and extraordinary empathy. In their later years in particular, his commitment to his now deceased parents, who formerly resided outside

3

of Philadelphia, necessitating that he regularly commute from Buffalo, provides further testament to his laudable humanity.

Our earlier submission details the inseparable connection Paul and Teresa enjoyed throughout their marriage[1] with Christ the King Seminary until it suddenly closed on February 4, 2020. Teresa has reported that the closing of the Seminary caused her to suffer a "loss of role/identity, relationships and community." We have noted that, over the past several years, the defendant has been in regular treatment with Dr. Michael Rutter. Our earlier submission includes a report from Dr. Rutter in which he states that "[v]ocationally and spiritually, [the Seminary] was the center of their existence." We explain, as well, that the emotional impact of the closing was magnified many times over by the fact there had been no warning this decision had been made and the announcement itself came, not from the Diocese or Acting Bishop, but rather through the news media. Dr. Rutter reports that this conflation of circumstances left Paul "panicky and agitated," and "triggered a flight-or-fight" reaction." The distraught of the moment was magnified by the fact his efforts to make contact with Teresa upon hearing this news were unsuccessful.

It was at this moment, in this mental state, that he left the death threat voicemail with Mr. Specht. His lack of planning or reflection before calling notwithstanding, Paul nevertheless shoulders full responsibility for his actions and the dire effect they had upon Mr. Specht and his family. He has repeatedly expressed his remorse and embarrassment for his cowardly behavior, and has prepared a letter of apology for Mr. Specht.

---

[1] In the context of preparing these pleadings, we have discovered that the PSR, at paragraph numbered 69, incorrectly reports that the Lubieneckis were married in 2000. That is not correct. Their marriage occurred ten years earlier in 1990.

What is also revealed in the earlier submission is that, both by outsiders, such as his college instructors, and within the family, Paul has never been viewed as violent. In the most straightforward way, his cousin, Andrea Wojcik, characterizes him as "not a rough and tough guy." In the same vein, both outsiders and family members comment in their character letters that the actions underlying Paul's conviction, particularly his harassing and threatening messages, constitute an aberration. It is not the Paul Lubienecki that they know.

It is against this substantiated factual backdrop that we ask the Court to evaluate the merits of our alternative requests for either a variance or a departure.

## II. LEGAL AUTHORITY SUPPORTING VARIANCE OR DEPARTURE

**A.** **Outside the "Heartland"**

Chapter 1, Part A (4)(b) of the *Sentencing Guidelines*, under the heading "Departures," provides the following:

> The Commission intends the sentencing courts to treat each guideline as carving out a "heartland," a set of typical cases embodying the conduct that the guideline describes. When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted.

The concept of an "outside the 'heartland'" departure is also recognized at Section 5K2.0(a)(3) of the *Guidelines*. That provision states that a departure may be warranted even if the relied upon circumstance was taken into consideration in determining a particular guideline range if that circumstance is present in the offense under consideration "to a degree . . . substantially below[ ] that which ordinarily is involved in that kind of offense."

5

A departure or variance based upon this concept of "heartland" has been recognized by the United States Supreme Court. For example, in *Koon v. United States*, 518 U.S. 81, 94 (1996), the Court stated that "the Act authorizes district courts to depart in cases that feature aggravating or mitigating circumstances of a kind or degree not adequately taken into consideration by the Commission." In *Rita v. United States*, 551 U.S. 338, 351 (2007), the Court discussed the steps to be taken by a sentencing judge in evaluating a request for a sentence different than that provided for in the applicable guideline. In this context, the Court observed that the judge "may hear arguments by prosecution or defense that the Guidelines sentence should not apply, perhaps because (as the Guidelines themselves foresee) the case at hand falls outside the 'heartland' to which the Commission intends individual Guidelines to apply, USSG Section 2K2.0, perhaps because the Guidelines sentence itself fails to properly reflect §3553(a) considerations, or perhaps because the case warrants a different sentence regardless, see Rule 32(f)." Then, in *Kimbrough v. United States*, 552 U.S. 85, 109 (2007), the Court remarked that a decision to vary from the Guidelines upon this basis "may attract greatest respect when the judge finds a particular case "outside the 'heartland' to which the Commission intends the individual Guidelines to apply." [Citing *Rita*, 551 U.S. at 351.]

*United States v. Roberts*, 2005 WL 1153757(S.D.N.Y. No. 01 CR 410 (RWS) decided May 16, 2005), provides an illustration of applying an "outside the heartland" departure to reach a fair result. In that case, the defendant had been prosecuted under what is known as the Analog Statute, Title 21 U.S.C. §802(32)(A). Observing that the purpose of this statute is to target the unlawful manufacture of designer drugs by "underground chemists," Judge Sweet found that the defendant had operated as if he were a lawful business, rather than in a clandestine fashion. In varying from the applicable Guideline and imposing a sentence of time served, the Court relied in

part upon a finding that the defendant's "conduct falls far field of the statute's 'heartland.'" 2005 WL 11537577*7.

*United States v. Johnson*, 964 F.2d 124 (2d Cir. 1992), provides an example of utilizing the "outside the heartland" concept in support of a departure. The underlying facts concerned the theft of public funds by a payroll clerk and a co-worker at a VA hospital. The core of the plan consisted of inflating paychecks. In order to share the wealth of their scheme, the two defendants had offered to inflate the paychecks of others with the understanding 50% of the inflated amount would be paid over to the defendants as a kickback. Upon this basis, a bribery violation was added to the criminal charges. Finding that the facts more supported a theft than bribery case, the lower court had applied a departure based upon both that circumstance and the fact the defendant payroll clerk had not received all the proceeds of the offense. On appeal, the Government did not contest the departure predicated upon the closer similarity of the facts to a theft than a bribery, but did oppose the further departure based upon nonreceipt of all of the proceeds. While agreeing this was correct, the Second Circuit nonetheless found it entirely appropriate that the "district court departed to a sentence that it considered more appropriate given the anomalous nature of the crime," as well as the lower court's concern for the defendant's family. 964 F.2d at 131. Upon this basis, the error in taking into consideration the defendant's profit splitting was found to be harmless, and the overall departure was affirmed.

**B.     Utilization of Alternative Guideline**

*United States v. Caba*, 911 F. Supp. 630 (E.D.N.Y. 1996), represents a case where the sentencing court applied the "outside the heartland" concept of the *Guidelines* in support of a

7

departure, which relied upon a Guideline different than that applicable to the offense of conviction. In this instance, even though the underlying conduct involved money laundering, and indeed the defendant had been convicted of that offense, the Court imposed a sentence that did not take into consideration the harsher calculations that would have applied had the specific guideline for money laundering been considered. In reaching this conclusion, the Court noted that "the crime here is not the type of major money laundering fraud that would warrant a ten to twelve year jail sentence." 911 F.Supp. at 636. Finding that the harsher *Guidelines* calculations for money laundering were a function of the customary connection of money laundering to drug crimes, the Court found that application of the money laundering Guideline to a food stamp fraud "would in this case produce a custodial range that grossly exaggerates the seriousness of the actual conduct." *Id.* Upon this basis, coupled with a lack of evidence of an intent to defraud the Government, the Court found that the defendant's "offense falls outside of the 'heartland' of the money laundering statute and Guideline." 911 F.Supp. at 637. In the end, the Court concluded that the far more lenient Guideline applicable to theft offenses, section 2F1.1, should be applied, rather than the more onerous money laundering Guideline, section 2S1.1. On appeal, the Second Circuit held that the lower court's "outside the 'heartland'" analysis in reaching a more fair sentencing result was appropriate. *United States v. Caba*, 104 F.3d 354 (2d Cir. 1996) [unpublished opinion].

Another example of a sentencing court's application of this outside the "heartland"/alternative Guideline rational in support of a downward departure is *United States v. Gamez*, 1 F.Supp. 2d 176 (E.D.N.Y. 1998). The facts of the case reveal that the defendants had assisted Columbian narcotics traffickers in exchanging drug proceeds for automobiles. Not surprisingly, the defendants were charged with money laundering. While not disputing that the

8

conduct at issue did involve this activity, the Court concluded that the fashion in which the transactions were handled more closely resembled structuring. Accordingly, the more favorable structuring Guideline found at section 2S1.3, as opposed to the money laundering Guideline, was applied, serving to reduce the defendants' sentencing exposure by almost one half. 1 F.Supp. 2d at 183.

C. <u>**Proposed Rationale for Variance**</u>

As has been noted, the defense requests the imposition of non-jail sentence based upon either granting a variance from the *Sentencing Guidelines*, or by means of an exercise of the Court's departure authority. We recognize that, before granting a variance, consideration must be given to the applicable *Guidelines* range and to the §3553(a) factors. In some respect, the Court must also examine its departure authority, although it is not necessary to ascertain precisely which departures could hypothetically apply. *United States v. McGowan*, 315 Fed.Appx. 338, 341 (2d Cir. 2009).

A basis for granting a variance in this case exists, giving due consideration to (1) the unique circumstances surrounding the offense conduct, specifically the devotion of the defendant and his wife, Teresa, to the Catholic Church, their unwavering affinity to the Christ the King Seminary, and the abrupt fashion in which the announcement of its closure was handled by the Diocese; (2) the history and characteristics of Mr. Lubinecki, revealing a man committed from childhood through adulthood to leading a life focused on Church, charity, education, and culture; and (3) the offense conduct, which falls well outside the "heartland" of cases customarily prosecuted under the federal cyberstalking statute, 18 U.S.C. §2261A(2). Below, we alternatively provide grounds for reaching the same result through exercise of the Court's departure authority.

D.  **Proposed Rationale for Departure**

In the *Caba* case, discussed above, the theft Guideline was used in lieu of the money laundering Guideline in order to more fairly apply the *Sentencing Guidelines* to the facts of the case. And, in *Gamez*, the structuring Guideline, rather than the money laundering Guideline was used for the same reason. In both instances, the sentencing court found that the underlying facts did not present a prototypical case for application of the more severe Guideline applicable to the offense of conviction.

The summary of known cases prosecuted under the federal cyberstalking statute, Title 18 U.S.C. 2261A(2), set forth in the Declaration appended to the separately filed Notice of Motion, reveals offense conduct of a different kind and degree of severity than that represented by the actions of Paul Lubienecki in leaving a total of six anonymous voicemails for Mr. Specht between mid-August 2019 and early February 2020. While his wrongdoing technically satisfies all the elements of this statute, and doubtless was criminal in character, it cannot be gainsaid that his actions were "outside the heartland" of cases embodying the type of conduct contemplated by Guideline section 2A6.2.

There is a sister statute which could have been used as the basis of the prosecution of Paul Lubienecki. That statute is Title 18 U.S.C. §875(c), which provides as follows: "Whoever transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined under this title or imprisoned not more than five years, or both." The main difference between §§ 875(c) and 2261A(2) is that the latter includes the additional requirement that an interactive computer service, electronic communication service or electronic communication system of interstate commerce be used in communicating the threat.

Section 2261(A)(2) also requires evidence focusing upon the effect of the threat upon the victim; however, it would be reasonable to expect that, in any case satisfying the requirement of §875 that there be evidence of a "threat to injure the person of another," the underlying conduct would have had the same effect upon the victim.

That §2261A(2) expressly refers to a threat evincing an intent to kill, whereas §875 refers to a threat "to injure the person of another," is a distinction of no moment. Section 875(c) is used to prosecute cases involving death threats. For example in *United States v. Doggart*, 906 F.3d 506, 511 (6th Cir. 2018), this statute was used in a case where the defendant had expressed an intention to kill suspected terrorists. In *United States v. Bozeman*, 495 F.2d 508, 509 (5th Cir. 1974), §875(c) was relied upon where the defendant had repeatedly expressed an intention to kill a Coast Guard lieutenant. Perhaps most relevant to the facts of the instant case, in *United States v. Li*, 537 F.Supp.2d 431, 433 (N.D.N.Y. 2008), another §875(c) prosecution, the evidence revealed the defendant had sent emails and made telephone calls threatening to kill five different faculty members and administrators at Morrisville State College, using language such as "You will die hard.", "You will lose it and then you will die.", "You will die soon mother f***er.", "You will die this Christmas.", and "I will kill you." *Id.*

In comparison to §2261A, the Guideline section applicable to a violation of §875 is section 2A6.1. Whereas, under Guideline section 2A6.2, the base offense level is 18, and there is a two level enhancement for a pattern of harassing activity, yielding a total offense level of 20, the base offense level under section 2A6.1 is 12, and there are no enhancements that would apply under the facts of the instant case. Particularly when consideration is given to the types of cases customarily prosecuted under §2261A(2), as set forth in the accompanying Declaration annexed to the Notice of Motion,

reliance upon the "outside the heartland" departure ground in this case, coupled with application of the Guideline applicable to a violation of 18 U.S.C. §875, is appropriate. Starting at Guideline section 2A6.1's base offense level of 12, and applying a three level reduction for acceptance of responsibility, yields a total offense level of 9. Mr. Lubienecki would then be eligible even under the *Sentencing Guidelines* to a non-jail sentence.

An additional consideration in this case is the undisputed fact that Paul Lubienecki's behavior was an aberration. As noted above, *Sentencing Guidelines* policy statement 5K2.20 recognizes the application of this departure ground to a defendant who engaged in "a single criminal occurrence or single criminal transaction that (1) was committed without significant planning; (2) was of limited duration; and (3) represents a marked deviation by the defendant from an otherwise law-abiding life." *Guidelines* section 5K2.20(b). We recognize that the oft-cited reason for not applying this departure ground is the requirement that the conduct constitute "a single criminal occurrence or single criminal transaction," that there not be "significant planning," and that the occurrence or transaction have been "of limited duration."

On this topic, the holding of the Second Circuit in *United States v. Gonzales*, 281 F.3d 38 (2002), is instructive. The facts in that case revealed that the defendant had manipulated payroll records to cause a severance payment to be made, that he had then altered direct deposit information to transfer payment into an account in his brother's name, and that the brother had then unsuccessfully attempted to withdraw a portion of the deposited funds. 281 F.3d at 39-40. The sentencing court declined to consider an aberrant conduct departure, holding as a matter of law that the offense was not of limited duration. 281 F.3d at 41. The Second Circuit disagreed, stating that the "current version of the Guidelines governing downward departure for aberrant behavior must be

applied in this case." 281 F.3d at 46. In reaching this conclusion, the Court specifically found that a seemingly thoughtless single act of spontaneous behavior did not represent the appropriate standard to be applied in determining whether or not this departure ground could be relied upon. In the words of the Court, "[s]pontaneity of behavior and behavior of limited duration simply are not the same." 281 F.3d at 47.

The Court again addressed the core requirements for an aberrant conduct departure in *United States v. Castellano*, 355 F.3d 56 (2d Cir. 2003). In affirming the determination below to not apply this departure ground, the Court explained that the amendment to this Guideline in November 2000, using the terms "transaction" and "occurrence" was intended to expand the reach of this departure ground from being limited to a "single act." 355 F.3d at 59. The Court further held that, while spontaneity of conduct is a relevant consideration, it is not determinative. "A non-spontaneous criminal act might be aberrant behavior." *Id*.

While the offense conduct of Mr. Lubienecki did extend over a period of approximately six months, and did involve six separate voicemail messages, the evidence reveals that these messages were triggered by news reports of Mr. Specht. It is doubtless fair to conclude that the defendant's conduct did not involve significant planning and was, most assuredly, a marked deviation of an otherwise law-abiding life. The question to be answered is whether or not, under the circumstances, the leaving of six voicemail messages over a period of approximately six months can be viewed as a single occurrence or transaction "of limited duration." Even if the Court concludes that this element of an aberrant behavior departure is lacking, the fact the defendant's conduct was completely out of character still represents a relevant consideration on the question of whether or not a variance is warranted in this case.

## CONCLUSION

For all of the reasons set forth in this submission and the accompanying Notice of Motion and Declaration, as further supported by the factual statements set forth in the separately filed Character Letter Submission of Mr. Lubienecki, it is respectfully requested that the Court exercise its discretion, either through a variance or a departure from the applicable *Guidelines* calculation, and impose a sentence which does not include a period of incarceration.

Dated: Buffalo, New York
November 2, 2021.

                                             **/s/ Rodney O. Personius**
                                             Rodney O. Personius, Esq.
                                             PERSONIUS MELBER LLP
                                             *Attorneys for Defendant*
                                               PAUL E. LUBIENECKI
                                             2100 Main Place Tower
                                             Buffalo, NY  14202
                                             (716)  855-1050
                                             rop@personiusmelber.com

TO:    AUSA Aaron J. Mango
          AUSA Charles Kruly
          U.S. Attorney's Office
          138 Delaware Avenue
          Buffalo, NY  14202

          U.S. Probation Officer Lisa Ferraro
          U.S. Probation Office
          2 Niagara Square
          Buffalo, NY  14202